UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALAN REIDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07 C 7271 |
| v. | ) | |
| | ) | Magistrate Judge Cox |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT**
**OF COMMISSIONER'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**Statement of the Case**

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) which found Plaintiff was not entitled to a period of disability or disability insurance benefits under Title II of the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).

Plaintiff filed an application for disability insurance benefits on March 22, 2005, alleging he became disabled on October 29, 2004 (Tr. 98D-98F). Plaintiff's application was denied initially, upon reconsideration, and after a hearing before an Administrative Law Judge (ALJ) (Tr. 76-77, 81-87, 298-325). The ALJ found Plaintiff was not disabled because he could perform a significant number of jobs in the national economy (Tr. 185-97). The Appeals Council granted Plaintiff's request for review of the ALJ's decision and remanded the case to the ALJ (Tr. 198-201, 215-17). Another administrative hearing was held on June 5, 2007, at which Plaintiff, represented by counsel, a medical expert, and a vocational expert testified (Tr. 256-97). In a June 29, 2007, decision, the ALJ found Plaintiff was not disabled because he could perform a significant number of jobs in the national economy (Tr. 17-29). After it reviewed additional evidence Plaintiff submitted, the Appeals Council denied Plaintiff's request for review (Tr. 6-9), and the ALJ's decision became the final decision of the Commissioner and the decision now subject to judicial review. 20 C.F.R. § 404.981.

**Statement of Facts**

**Background**

Plaintiff, born in 1964, was forty-two years old on the date the ALJ issued her decision (Tr. 98D). Plaintiff had a high school education and a college degree and had special job training in software development (Tr. 106, 119), and previously worked as a database administrator and laboratory technician (Tr. 101, 115, 124-32). Plaintiff indicated he was unable to work due to severe low back pain and depression (Tr. 100, 264).

**Relevant Medical Evidence**

A September 2004 MRI of Plaintiff's lumbar spine revealed L4-5 and L5-S1 disc bulges combined with end plate spurs and posterior element hypertrophy to cause mild-to-moderate central stenosis and mild biforaminal stenosis (Tr. 148-49).

In April 2005, Dr. Shapiro indicated that he first saw Plaintiff in March 1998 (Tr. 155). He reported that Plaintiff's main problem was low back pain and lumbosacral radiculopathy (Tr. 155). Plaintiff had received multiple courses of physical therapy and had epidural steroid injections, but without significant improvement (Tr. 155). Dr. Shapiro noted that, lately, Plaintiff's pain had gotten so bad that he was unable to work (Tr. 155). He stated that Plaintiff was able to sit for one hour only and then, in order to alleviate the pain, had to stay in bed for two hours (Tr. 155). When Dr. Shapiro saw Plaintiff early that month, his physical examination was significant for positive straight leg syndrome on the left and muscle spasm (Tr. 155). There was decreased frontal lateral bending and extension of the lumbosacral spine (Tr. 155). The rest of the physical exam was grossly unremarkable (Tr. 155). Dr. Shapiro opined Plaintiff was unable to work due to severe lumbosacral radiculopathy, disc protrusion, and spinal stenosis (Tr. 156).

Dr. Kenney, a state agency physician, reviewed the record evidence in May 2005 and concluded Plaintiff could perform a range of light exertional work (Tr. 160-67). Dr. McCracken, also a state agency physician, reviewed the record evidence in July 2005 and affirmed Dr. Kenney's assessment (Tr. 182).

In June 2005, Plaintiff underwent a Functional Capacities Evaluation (FCE) (Tr. 170-79). Susan Hardin, a physical therapist, reported that Plaintiff was incapable of sustaining medium exertional work for an eight-hour day, but was likely to tolerate working at the light exertional level for an eight-hour day (Tr. 171). Ms. Hardin noted that Plaintiff's self-limiting behavior heavily influenced the test (Tr. 171).

In July 2005, Dr. Shapiro noted that he last saw Plaintiff in May 2005, and reported that Plaintiff had spinal disc disease with L4-5 right posterior lateral focal protrusion (Tr. 153). Dr. Shapiro again opined Plaintiff was unable to work (Tr. 153, 154). He recommended Plaintiff continue exercise, follow up with neurosurgery, and consider repeating epidural injection (Tr. 153).

Plaintiff began seeing Dr. Nutenko, a psychiatrist, in August 2005 (Tr. 211-14, 202-10, 239-43). He diagnosed moderate major depressive disorder and prescribed medication (Tr. 214). In October 2005, Dr. Nutenko noted minimal improvement on Zoloft (Tr. 209). Similarly, in December 2005, he indicated that Plaintiff was better in general on Zoloft (Tr. 210). In October 2006, Dr. Nutenko discontinued Zoloft and began a trial of Wellbutrin (Tr. 202). In January 2007, Plaintiff's condition was better, but in February 2007, Plaintiff's condition had worsened (Tr. 239).

In March 2007, Dr. Nutenko completed a "Social Security Medical Questionnaire" form and indicated that Plaintiff had moderate limitations in his ability to perform several mental work-related activities listed on the form (Tr. 248-50).

Dr. Oberlander, a clinical psychologist (Tr. 45), reviewed the record evidence and testified as a medical expert at the June 2007 hearing. Dr. Oberlander stated that Plaintiff had an affective disorder and depressive disorder secondary to non-psychiatric pain issues (Tr. 274). Based on the psychiatric condition alone, Dr. Oberlander testified that Plaintiff could perform simple and detailed work activity and had the cognitive functioning to remember and understand more than simple instructions (Tr. 280-81).

**Vocational Evidence**

At the administrative hearing, the ALJ posed a series of hypothetical questions to James

Radke, the vocational expert, including one describing someone of Plaintiff's age, education, and past work experience, who could lift and carry ten pounds frequently and occasionally; sit for six to eight hours out of the day; stand and walk up to two hours out of the day; required the opportunity to sit and stand every thirty to forty-five minutes; only occasionally stoop, crawl, crouch, kneel, and climb stairs and ramps; never climb any ladders, ropes, and scaffolds; and who was limited to jobs that were simple and unskilled with no regular general public contact and limited interaction with co-workers and supervisors (Tr. 288-89). Mr. Radke testified that the hypothetical individual could perform the jobs of mail clerk, security guard, general office clerk, and courier, which numbered approximately 13,600 in the nine-county northeastern Illinois area (Tr. 289-90).

**Evidence Submitted to the Appeals Council**

In March 2007, Dr. Shapiro completed a "Social Security Questionnaire" form and indicated that Plaintiff could work eight hours per day, but could only sit for a total of two hours and stand for a total of two hours, and needed to lie down at unpredictable intervals during a work shift (Tr. 255).

## Argument

### I. Standard of Review

Judicial review of the Commissioner's decision is authorized by 42 U.S.C. § 405(g), which provides that the findings of the Commissioner are conclusive if supported by substantial evidence. The Commissioner has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and determine the case accordingly. *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). Therefore, judicial review is limited to determining whether the Commissioner applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. 42 U.S.C. § 405(g); *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). The Court must affirm the Commissioner's decision if his findings and inferences

reasonably drawn from the record are supported by substantial evidence, even though some evidence may also support the claimant's claim. 42 U.S.C.§ 405(g); *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir. 1993). Thus, the Court may reverse the Commissioner's decision only if the evidence "compels" reversal, not merely because the evidence supports a contrary decision. *INS v. Elias-Zacarias*, 112 S.Ct. 812, 815 n.1 (1992)(emphasis original). A reviewing court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Ehrhart v. Secretary of Health and Human Services*, 969 F.2d 534, 538 (7th Cir. 1992).

## II. The ALJ's Finding That Plaintiff was not Disabled is Supported by Substantial Evidence and Should be Affirmed

The ALJ properly applied the five-step sequential evaluation process and found Plaintiff's lumbar spine stenosis/bulging and depressive disorder due to physical condition were severe impairments (Tr. 22), but that he did not have an impairment or combination of impairments that met or equaled an impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22-23). Plaintiff now complains that the ALJ erred because she did not find that his impairments met the criteria of a listed impairment, Listing 1.04. Pl.'s brief at 9. Significantly, Plaintiff fails to present any meaningful argument in this regard and does not even describe all the criteria of Listing 1.04, much less argue that her impairments met or equaled these specific requirements. In order to be considered disabled under step three, a claimant must satisfy all of the criteria in that listing. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). Thus, Plaintiff has waived any challenge to the ALJ's step-three finding. *See Ehrhart*, 969 F.2d at 537 n.5 (citations omitted) (holding that issue which was listed in statement of issues, but was a "no-show" in the body of the brief drops out, and observing that compelling the court to take up a burdensome and fruitless scavenger hunt for arguments is a drain on its time and resources."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

After making her finding at step-three of the sequential evaluation, the ALJ proceeded to evaluate Plaintiff's residual functional capacity to perform work-related activities. Considering the record evidence, the ALJ found that, while Plaintiff experienced some functional limitations, he was

able to lift/carry ten pounds at a time and occasionally lift/carry articles like docket files, ledgers, and small tools; stand/walk two hours in an eight-hour day; sit at least six hours in an eight-hour day; alternating between sitting and standing every thirty to forty-five minutes; occasionally stoop, crawl, crouch, kneel, and climb stairs/ramps; never climb ladders, ropes, or scaffolds; and who could perform jobs with no regular general public contact, limited interaction with co-workers and supervisors; and limited to simple, unskilled tasks (Tr. 23). She also found that Plaintiff's subjective description of his symptoms and functional limitations was not entirely credible (Tr. 26-27). Relying on vocational expert testimony in response to a hypothetical question that reflected Plaintiff's vocational profile and all his credible limitations, the ALJ concluded Plaintiff was not disabled because he could perform a significant number of jobs in the economy (Tr. 28-29). Substantial evidence supports the ALJ's finding that Plaintiff was capable of performing a significant number of jobs. Plaintiff challenges the ALJ's decision, arguing the ALJ erred: (1) in weighing the record physician's and psychologist's opinions; (2) in assessing his credibility; (3) and by relying on the vocational expert's testimony.[1] Because Plaintiff's arguments are without merit, Defendant respectfully requests that this Court affirm the Commissioner's decision that Plaintiff was not disabled and not entitled to disability insurance benefits.

Contrary to Plaintiff's claim, the ALJ properly considered and discussed Dr. Shapiro's opinion regarding Plaintiff's physical abilities, as well as Dr. Nutenko's opinion about his mental abilities (Tr. 24-28). Dr. Shapiro opined Plaintiff was unable to work and that he had to stay in bed for two hours after sitting for one hour (Tr. 153, 154, 155). The ALJ explained that she did not give this opinion any significant weight because it was not well-supported (Tr. 27-28). *See* 20 C.F.R. § 404.1527(d)(2), (3); Social Security Ruling (SSR) 96-2p (in order to be entitled to controlling weight, a medical opinion must be rendered by a treating source, be well-supported by medically acceptable clinical and laboratory diagnostic techniques, and also must not be inconsistent with other

[1] By not raising any other issues before this Court, Plaintiff has waived all other arguments on judicial review. *See Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001).

substantial evidence in the record). For example, as the ALJ appropriately acknowledged, Dr. Shapiro's own treatment notes did not support his disabling limitations (Tr. 27). Indeed, it does not even appear that Plaintiff submitted Dr. Shapiro's actual notes. A dictated report from Dr. Shapiro only reported some positive straight leg syndrome on the left and some muscle spasm, as well as some decreased lumbar range of motion (Tr. 155). The September 2004 MRI revealed some disc bulges and only mild-to-moderate central stenosis and mild biforaminal stenosis (Tr. 148-49). Considering the lack of significant objective findings, the ALJ reasonably concluded that Dr. Shapiro's unsupported opinion was not persuasive or dispositive (Tr. 27-28). In light of the foregoing, the ALJ could reasonably conclude that Dr. Shapiro's opinion was based upon Plaintiff's complaints, and appropriately declined to grant it any significant weight. *See Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("An ALJ may properly reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations."); *Farrell v. Sullivan*, 878 F.2d 985, 989 (7th Cir. 1989) ("The ALJ also determined that Dr. Zasadny's observations were mere recitations of Farrell's complaints, not the objective observations required by the Listings.").

Dr. Shapiro's opinion that Plaintiff was unable to work was also inconsistent with other record evidence. *See* 20 C.F.R. § 404.1520(d)(2), (4); SSR 96-2p. Dr. Kenney, a state agency physician, reviewed the record evidence in May 2005 and concluded Plaintiff could perform a range of light exertional work (Tr. 160-67). Dr. McCracken, also a state agency physician, reviewed the record evidence in July 2005 and affirmed Dr. Kenney's assessment (Tr. 182). Similarly, in June 2005, Susan Hardin, a physical therapist, performed a FCE of Plaintiff and reported that Plaintiff was incapable of sustaining medium exertional work for an eight-hour day, but was likely to tolerate working at the light exertional level for an eight-hour day (Tr. 171). Rather than adopt any of these assessments, the ALJ concluded Plaintiff was further limited, but could still perform a range of sedentary work, the least exertional level of work. However, the shared assessment of the state agency reviewing physicians and Ms. Hardin's evaluation contradicts Dr. Shapiro opinion that Plaintiff was unable to work.

Similarly, the ALJ also considered and discussed Dr. Nutenko's assessment of Plaintiff's mental abilities (Tr. 25-26). Dr. Nutenko completed a "Social Security Medical Questionnaire" form and indicated that Plaintiff had moderate limitations in his ability to perform several mental work related activities listed on the form (Tr. 248-50). While moderate limitations are not necessarily disabling, Dr. Nutenko also opined that Plaintiff experienced repeated episodes of deterioration or decompensation, and was also markedly impaired in his ability to accept instructions and respond appropriately to criticism from supervisors (Tr. 248, 250). The ALJ recognized Dr. Nutenko's opinion in this regard, but explained that it was likely that he did not understand the meaning of repeated episodes of deterioration or decompensation as there was no evidence of such episodes in the record (Tr. 26). Further, it is also not at all clear on what evidence Dr. Nutenko based his opinion that Plaintiff was markedly impaired in his ability to accept instructions and respond appropriately to criticism from supervisors. Significantly, Dr. Nutenko offered no explanation regarding his conclusions, reflected in checkmarks on a form (Tr. 248-50). His brief and sketchy treatment notes do not contain such significant findings regarding Plaintiff's functioning (Tr. 202-10, 239-43). Indeed, at the September 2006 hearing, even Plaintiff declined to describe his visits with Dr. Nutenko as therapy: "You know, he ask me question, but I, I, I wouldn't call it a therapy." (Tr. 310). Further, Plaintiff did not report any past problems relating to supervisors in the workplace. In any event, the ALJ reasonably accommodated any problems Plaintiff had in this regard by restricting him to limited interaction with co-workers and supervisors. As above, Dr. Nutenko's opinion was not entitled to significant weight because it was not sufficiently supported by medical findings. *See* 20 C.F.R. § 404.1527(d)(2), (3); SSR 96-2p

Dr. Nutenko's opinion was also contradicted by the assessment of the medical expert, Dr. Oberlander. Dr. Oberlander reviewed the record evidence and testified that Plaintiff could perform simple and detailed work activity and had the cognitive functioning to remember and understand more than simple instructions (Tr. 280-81). Plaintiff complains that the ALJ erred in relying on Dr. Oberlander opinion because Dr. Oberlander did not consider Plaintiff's complaints of chronic

physical pain. Pl.'s brief at 11-13. However, the ALJ did consider Plaintiff's physical condition and reasonably accommodated his functional limitations by restricting him to a range of sedentary work.[2]

In light of the foregoing discussion of the record evidence, the ALJ reasonably concluded Plaintiff could perform a range of sedentary work with no regular general public contact, limited interaction with co-workers and supervisors; and limited to simple, unskilled tasks. For all the reasons discussed above, the ALJ was not required to grant controlling weight, or even significant weight, to Dr. Shapiro's opinion or Dr. Nutenko's assessment because they were not sufficiently supported by the medical evidence in the record and were also inconsistent with other substantial record evidence. *See* 20 C.F.R. § 404.1527(d)(2), (3), (4); SSR 96-2p.

Contrary to Plaintiff's assertion, the ALJ also properly assessed the credibility of his subjective complaints of disability in evaluating his residual functional capacity. Pl.'s brief at 10-11. Indeed, the ALJ specifically indicated that she considered Plaintiff's symptoms pursuant to the relevant regulations and SSR 96-7p (Tr. 23-24). For example, as discussed above, the ALJ properly considered the lack of objective medical evidence to support Plaintiff's allegations. *See* 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."); SSR 96-7p ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms."). As discussed above, objective medical evidence to support Plaintiff's allegations of disability was absent from the record evidence.

The ALJ also properly considered Plaintiff's daily activities (Tr. 26-27). For example, at the

---

[2] Plaintiff also questions the description of simple and detailed work activity. Pl.'s brief at 12. However, the ALJ concluded that Plaintiff was limited to simple, unskilled work, and also directed the vocational expert to consider "simple, unskilled work, not even detailed . . ." (Tr. 289). Thus, Plaintiff's dispute in this regard is misplaced.

first hearing in September 2006, Plaintiff testified that he was able to bathe and dress himself (Tr. 315). He did not cook, but could make a sandwich (Tr. 314). Plaintiff explained that he lived with his girlfriend and that she did the household chores (Tr. 314-15). He stated that he read a lot, including novels and Popular Science (Tr. 316). Plaintiff watched televison, including a lot of the history channel (Tr. 316). Plaintiff also went to Mexico for two weeks in the winter of 2005 (Tr. 317). He also spent three months in Asia, beginning in November 2006 (Tr. 269-70). While somewhat limited, Plaintiff's daily and recreational activities support the ALJ's finding that his complaints of disabling pain and symptoms were not fully credible.

The ALJ also properly considered Plaintiff's course of treatment and use of medication (Tr. 27). 20 C.F.R. § 404.1529(c)(3); SSR 96-7. The ALJ appropriately recognized that Plaintiff's medical care had been essentially routine and/or conservative in nature and that he failed to follow up on Dr. Shapiro's recommendations (Tr. 27). Plaintiff complains that the ALJ improperly made a medical finding in this regard, Pl.'s brief at 10, however the ALJ was merely assessing the nature of Plaintiff's treatment history. And, instead of providing an explanation for his failure to comply with his physician's treatment suggestions, Plaintiff only disputes the ALJ's characterization of it as motivated by a desire to generate favorable evidence. Pl.'s brief at 10, citing Tr. 27. The ALJ reasonably concluded that Plaintiff's treatment and use of medication detracted from the credibility of his subjective complaints.

The ALJ also noted that Plaintiff had been seeking a job where he could work from home, but had stopped by the time of the second hearing (Tr. 27). The ALJ reasonably characterized his cessation as an inability to obtain work, rather than an inability to perform work, considering Plaintiff's own testimony that he "sort of gave up because [he] couldn't find anything for the very long period of time" (Tr. 263). Plaintiff's assertion that this was error is unavailing and should be rejected.

The ALJ appropriately evaluated Plaintiff's credibility and reasonably concluded Plaintiff's subjective allegations of disabling limitations were not fully credible. The Seventh Circuit has long

recognized that an ALJ's credibility findings are entitled to considerable deference. In *Imani ex rel. Hayes v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986), cert. denied, 479 U.S. 988 (1986), the Court articulated its well-established rule that ALJs' credibility determinations will not be overturned unless "patently wrong." In *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000), the Court reiterated that "Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference . . . . We will reverse an ALJ's credibility determination only if the claimant can show it was 'patently wrong.'" (Citations omitted). The Court further observed that, although an ALJ may not reject a claimant's subjective complaints "solely because they are not fully supported by the medical [evidence, the ALJ] may consider that as probative of the claimant's credibility." *Id.* (Citation omitted).

At the administrative hearing, the ALJ posed a series of hypothetical questions to James Radke, the vocational expert, including one describing someone of Plaintiff's age, education, and past work experience, who could lift and carry ten pounds frequently and occasionally; sit for six to eight hours out of the day; stand and walk up to two hours out of the day; required the opportunity to sit and stand every thirty to forty-five minutes; only occasionally stoop, crawl, crouch, kneel, and climb stairs and ramps; never climb any ladders, ropes, and scaffolds; and who was limited to jobs that were simple and unskilled with no regular general public contact and limited interaction with co-workers and supervisors (Tr. 288-89). Mr. Radke testified that the hypothetical individual could perform the jobs of mail clerk, security guard, general office clerk, and courier, which numbered approximately 13,600 in the nine-county northeastern Illinois area (Tr. 289-90). The ALJ's hypothetical question was proper because it included all credible limitations as found by the ALJ. The vocational expert's testimony constitutes substantial evidence supporting the ALJ's decision that Plaintiff was not disabled.

Plaintiff argues that the ALJ erred in relying on the vocational expert's testimony because it conflicted with the information contained in the Dictionary of Occupational Titles (DOT). Pl.'s brief at 15-16. Plaintiff contends that, given his residual functional capacity, he could not perform

the job of mail clerk (DOT # 209.687-026) because that is a light exertional job; security guard (DOT # 205.362-022 (identification clerk)) because that job is semi-skilled; or the job of mail clerk (DOT # 237.367-046 (telephone quotation clerk)) because that job primarily involves answering the telephone and speaking to customers. Pl.'s brief at 15. While these jobs might have been beyond Plaintiff's abilities, given the DOT descriptions, he has presented no evidence that he was unable to perform the job of courier. And, Mr. Radke testified that there were about 1,000 courier jobs that Plaintiff could perform. In any event, there was no evidence of a conflict between Mr. Radke's testimony and the information contained in the DOT submitted to the ALJ. Therefore, it was reasonable for her to rely on Mr. Radke's testimony in finding Plaintiff was not disabled.

This Court should therefore affirm the Commissioner's decision that Plaintiff was not disabled and not entitled to disability insurance benefits.[3]

---

[3]Plaintiff also submitted additional evidence to the Appeals Council, consisting of Dr. Shapiro's March 2007 "Social Security Questionnaire" form, that indicated that Plaintiff could work eight hours per day, but could only sit for a total of two hours and stand for a total of two hours, and needed to lie down at unpredictable intervals during a work shift (Tr. 255). This Court may not consider this evidence on substantial evidence review of the ALJ's decision. At most, this evidence may be considered in determining whether a remand is warranted pursuant to sentence six of 42 U.S.C. § 405(g) if a showing is made that the evidence is new, material, and that there is good cause for failure to incorporate the evidence into the record at the administrative hearing. Plaintiff has failed to show that this additional evidence met this criteria. Indeed, he has not even attempted to do so. Therefore, remand pursuant to 42 U.S.C. § 405(g) (sentence six) based upon this evidence is not appropriate in this case.

**Conclusion**

The Commissioner respectfully requests that this court affirm the ALJ's decision that plaintiff was not disabled and deny plaintiff's requested remedy.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: s/ Samuel S. Miller
SAMUEL S. MILLER
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-9083
samuel.s.miller@usdoj.gov

Of Counsel:

DONNA L. CALVERT
Regional Chief Counsel
Social Security Administration

CYNTHIA A. FREBURG
Assistant Regional Counsel
200 West Adams Street, Suite 3000
Chicago, Illinois 60606
(312) 353-8253