IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **Alan Reider,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No.: 07C 7271 |
| | ) | Magistrate Judge: Cox |
| **Michael J. Astrue,** | ) | |
| | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S REPLY BRIEF**

    Defendant argues in his memorandum in support of motion for summary judgement that Plaintiff failed to present any meaningful argument regarding whether or not Reider's condition met listing severity at the third step of the sequential evaluation process, thus waiving argument regarding that issue.  However, the medical expert, Dr. Oberlander, opined his affective disorder resulted (R277) in marked impairment of concentration, per subsection of Section 12.04, later changing it to only "moderate" (R279) after the ALJ made comments regarding the Plaintiff's testimony at his first hearing, exemplified by a leading question from the ALJ (R277).  As soon as the ME testified concentration was markedly impaired, the ALJ informed him Plaintiff's testimony at that first hearing was not indicative of a person with marked limitation in concentration.  After the ME indicated he was not present at the earlier hearing, the ALJ asked whether Plaintiff's testimony impressed the ME as a person with marked limitations in concentration.  He replied he did not think so but, before being given the opportunity to finish, he was interrupted by the ALJ (R278), who stated the ME was telling her what Plaintiff's doctor

said, whereas she wanted his opinion based on the evidence as a whole. The ALJ then pointed out the treating doctor in fact wrote impairment of concentration was absent. This argumentative exchange reflects non compliance with SSR 96-5P because the ALJ initially impeached the ME's testimony, in terms of evaluation of concentration, by confronting him with a characterization of Plaintiff's testimony at his first hearing that he obviously did not hear and did not have the opportunity to review. Therefore, he could not render his own expert opinion accordingly. The ALJ then interrupted him for purportedly merely regurgitating what the Plaintiff's doctor said, whereas she wanted his opinion based on the evidence as a whole. It is not improper for a medical expert at a hearing to render a different, or even the same opinion, of a treating physician. The job of the adjudicator is to resolve any conflicts. It is Plaintiff's contention the ME was inappropriately interrupted during the course of his testimony effectively preventing from rendering his own opinion. In addition the ALJ's analysis at the third step of the sequential evaluation process reflects an error of law because the opinions of the treating doctors, as well as Dr. Oberlander, were not evaluated in compliance with SSR 96-5P. In conjunction with this argument, Plaintiff asserts Dr. Oberlander clearly opined Plaintiff suffered from a marked limitation in concentration (R277). The treating psychiatrist, Dr. Yutenko, further opined he suffered from marked limitations in the ability to accept instructions and respond appropriately to criticism from supervisors (R250). Thus a threshold argument of meeting listing 12.04 could have been made by Plaintiff, in terms of meeting the criteria necessary at subsection B for marked limitations in concentration and in social functioning, that would further lead to an equaling of severity argument when considered in conjunction with Plaintiff's lumbar radiculopathy problem, per Section 1.04. That threshold argument was

foreclosed by the ALJ's interference with the medical expert's testimony. The opinion of Dr. Shapiro was also rejected, in terms of Section 1.04A, despite diagnosis of lumbar radiculopathy with positive straight leg testing. In any event Plaintiff's pain was not considered in the step three analysis, per 20 CFR Section 404.1525 (e) in conjunction with Section 1.04A, given the fact Dr. Oberlander's opinion likewise did not include analysis of pain (R276). Thus the argument that Plaintiff's condition equaled listing severity at Section 1.04A in conjunction with 12.04A was effectively eliminated as the ME changed his opinion by opining concentration was only moderately impaired (R279). Without pain otherwise appropriately factored in this analysis, the ALJ's determination at the third step of the sequential evaluation process is not supported by substantial evidence and reflects an error of law.

      Regarding credibility, Defendant's brief asserts the ALJ properly considered Plaintiff's course of treatment and use of medication and appropriately recognized his medical care was essentially routine and/or conservative in nature, concluding she was merely assessing the nature of his treatment history. Rather than a "mere assessment" of the nature of Plaintiff's treatment history, however, the ALJ specifically found it was <u>not</u> the type of medical treatment one would expect for a totally disabled individual and that his care was essentially routine and/or conservative in nature (R27). Defendant's brief thus begs the question of what type of medical treatment "one would expect" for a totally disabled individual and what sort of "treatment" one would consider essentially routine and/or conservative. The ALJ clearly decided those questions by making her own independent medical finding that the nature and history of his treatment was indicative of the fact he was not disabled. No such testimony was elicited from the medical expert at the hearing. The ALJ did indeed assess the nature of his treatment and made her

conclusion accordingly. If such judgements can be made by a lay person about one's medical treatment and history that reveal to the person that the individual is not disabled, then none of the other evidence matters, including Plaintiff's testimony. Therefor, the ALJ's credibility analysis is fatally flawed because her conclusion regarding the nature and course of Plaintiff's treatment is an "objective factor" that can be scrutinized on appeal because she made an independent medical finding, precipitating rejection of his subjective testimony, without expressly relying on any medical evidence or authority. See Rohan v. Chater 93 F. 3d 966 (7th Cir. 1996). As Defendant asserts, it is no doubt true hearing officers are in the best position to see and hear witnesses and assess their forthrightness but when their testimony can be rejected by a foregone conclusion that their treatment is not compatible with disability, this consists of utilization of an objective factor that is patently wrong. It also shows not only was the cloak of physician assumed by the ALJ, but the cloak of advocate as well as indicated by the exchange between the ALJ and the ME. Defendant's brief presents no meaningful argument regarding these issues.

      Regarding the fifth step of the sequential evaluation process, Defendant's brief (page 12) concedes 3 of the jobs cited by the vocational expert were beyond Plaintiff's abilities given the DOT descriptions. That being the case, this matter should be remanded on that issue alone. Defendant's brief goes on to contend the VE's testimony that there were about 1,000 courier jobs Plaintiff could perform satisfies Defendant's burden of proof at the fifth step of the sequential evaluation process. There is no merit to that argument because the VE could not provide a DOT code for the courier job (R291). Thus the reviewing court has no way of determining what the duties or functional requirements of that job are, without guessing. The court can have no confidence in the VE's testimony in any event because 3 of the DOT codes proferred admittedly

were not within the bounds of the hypothetical and obviously conflict with the DOT, contrary to SSR 00-4P.  This shows an error of law was made by Defendant's own admission.  The conclusion there was no conflict between the DOT and the VE's testimony is without merit.  Thus the VE's testimony regarding the jobs cited is not reliable and cannot constitute substantial evidence.  See McKinnie v. Barnhart 368 F. 3d 907 (7th Cir. 2004).

Also regarding the fifth step of the sequential evaluation process, Defendant's brief fails to address the VE's testimony on cross examination in response to hypotheticals posed by counsel.  When 20% limitations in ability to remember location and work like procedures, to understand and remember detailed instructions and carry out detailed instructions were added, the VE testified that the person would be severely challenged in terms of being able to maintain employment because if they were only 80% plugged in (R295) with what was required, they would not be able to maintain employment even without a 20% reduction in the other aspects included in the hypothetical.  The VE also testified that a person needed to be able to understand and act upon things 90% of the time, in terms of ability to accept instructions and respond appropriately to criticism from a supervisor, and that any downward deviation from that point made it a difficult situation.  He also agreed that a person markedly impaired from accepting instructions and responding appropriately to criticism was not employable (R296).  In conjunction with this argument, it is significant to note that the ME, Dr. Oberlander, offered no specific quantification of what the term "moderate" implied in terms of defining functional limitations, other than it was anywhere from 0 to 20% (R282).  Neither did the ALJ.  Thus there is no evidence to contradict the VE's testimony regarding the limitations and their impact, elicited during cross examination by Plaintiff's counsel, including the conclusions of the ALJ

regarding those limitations (23).  The proposition that the "moderate" limitations equal a functional impact of 20% is otherwise supported by the record most persuasively.  Although the ME at the hearing, Dr. Oberlander, and everyone else assumed Claimant's Global Assessment of Functioning was 45, in fact it was rated 40 (R243)(R247).  A GAF score of 40 connotes serious symptoms with some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgement, thinking or mood.[1]  It is likewise significant to note the VE further opined an individual was unemployable with only a 10% limitation in ability to accept criticism from supervisors and that the testimony of Dr. Oberlander reflects pain was not taken into account in his estimate of Plaintiff's functional capabilities.  Taking this evidence as a whole, the 20% limitation is both reasonable and probably an underestimate, given the fact pain was not included as a factor in the medical expert's testimony.

  For the aforementioned reasons this matter should be reversed as Defendant failed to sustain its burden of proof at the fifth step of the sequential evaluation process.  Alternatively it should be remanded for proper consideration of the aforementioned issues.

                Respectfully submitted,

                S/Clyde Ogg

                Attorney for Alan Reider

Clyde Ogg
2045 S. Arlington Heights Rd., Ste. 118
Arlington Heights, IL 60005

---

[1] See Diagnostic and Statistical Manual of Mental Disorders, page 34 (Fourth Edition 2000.)

847/593-2345

–7–